<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **STEFAN PETKOVIC, *et al.*, individually and on behalf of others similarly situated,** | |
| Plaintiffs, | Civil Action No. 19-9471 (ZNQ) (TJB) |
| v. | **OPINION** |
| **BLOOMBERG L.P.,** | |
| Defendant. | |

<u>**QURAISHI, District Judge**</u>

Before the Court is a Renewed Motion to Approve Collective Class Action filed by Plaintiffs Stefan Petkovic, John Hughes, and Rohan Vagle, individually and on behalf of others similarly situated ("Plaintiffs"). (ECF No. 121.) Plaintiffs filed a Brief in Support ("Moving Br.," ECF No. 121-1), and Declarations of the Named Plaintiffs (ECF Nos. 20-6, 122; and 123.) Defendant Bloomberg L.P. ("Bloomberg") filed an Opposition, ("Opp'n Br.," ECF No. 128), and Plaintiffs filed a Reply. ("Reply Br.," ECF No. 129.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiffs' Renewed Motion to Approve Collective Class Action will be GRANTED.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Named Plaintiffs Petkovic, Hughes, and Vagle are former employees of Bloomberg and current residents of New York and New Jersey. (ECF No. 111, First Amended Complaint ("FAC")

¶¶ 7–12.)  Plaintiffs bring a collective action for class members under the Fair Labor Standards Act ("FLSA") and under the New Jersey Overtime Law.  (FAC ¶¶ 15,17.)  The proposed class is all persons that were "non-supervisory employees (including but not limited to Data Analysts and Data Specialists) who acquire, maintain, and update data in Bloomberg L.P.'s Global Data Division, and who were not paid time and one half hours for hours worked over 40 in one or more weeks."  (FAC ¶ 15.)  Bloomberg is a multinational media corporation with its principal place of business in New York.  (FAC ¶¶ 29–30.)  Additionally, Bloomberg maintains a Global Data Division located in Princeton, New Jersey.  (FAC ¶ 31.)

Plaintiffs were employed as either Data Analysts or Data Specialists within the Global Data Division.  (FAC ¶ 40.)  Plaintiffs were salaried employees and were hired to work 40 hours per week. (*See* FAC ¶¶ 44,56.)  Generally, Plaintiffs were scheduled to work weekly for five eight-hour shifts, plus additional time for lunch.  (FAC ¶ 44.)  Plaintiffs allege that they often worked beyond their scheduled shift hours and during their lunch breaks.  (FAC ¶¶ 45–46.)  Plaintiffs assert that Bloomberg knew or should have known that Plaintiffs worked beyond their scheduled shift hours because Plaintiffs typically reviewed work emails and studied different issues regarding the data outside of their scheduled hours.  (FAC ¶ 47.)  Therefore, in failing to provide a time-keeping system that would record hours worked, Bloomberg failed to compensate Plaintiffs accordingly.  (FAC ¶¶ 50,58.)

In the operative FAC, Plaintiffs assert five causes of action based on violations of the following statutes: (1) FLSA, 29 U.S.C. § 203, 207; (2) New Jersey Wage and Hour Laws, N.J.S.A §§ 34:11-56a et seq.; (3) New York Labor Law Articles 6 and 19; (4) New York Labor Law § 195(1)(a); and (5) New York Labor Law § 195(1)(3).  (FAC ¶¶ 64–75.)[1]

---

[1] In April 2019, this action commenced when Plaintiffs filed their initial Complaint.  For a full recitation of the procedural history, the Court refers the parties to the Court's Opinion issued on April 21, 2021.  (ECF No. 107.)

II.   **LEGAL STANDARD**

"The FLSA establishes a federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 123 n.1 (3d Cir. 2018) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)).  Under Section 16(b) of the FLSA, employees may bring collective actions, on behalf of themselves and others similarly situated.  "Similarly situated" provides that members of a collective action are "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012).  Courts will look to pertinent factors to determine whether employees are "similarly situated" such as, "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014) (quoting *Zavala*, 691 F.3d at 536–37).

The Third Circuit follows a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. University of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013).  At the first stage, known as conditional certification, a plaintiff is required only to meet the "fairly lenient standard" of a "modest factual showing." *Id*. (quoting *Zavala*, 691 F.3d at 536 & n.4).  "Under the modest factual showing standard, a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013) (cleaned up).

A court's grant of conditional certification is an exercise of its "discretionary power, to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under FLSA." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989) *Symczyk*, 656 F.3d at 194 (internal quotation marks and citations omitted); *accord Symczyk*, 569 U.S. at 74–75.  Upon the Court's preliminary determination that the plaintiffs have successfully produced some evidence of similarly situated employees, notice of the suit is sent to this class of employees, and they may join the action by returning a signed consent form to the court. *Camesi*, 729 F.3d at 242–43.  Next, plaintiffs must satisfy a preponderance of the evidence standard. *Zavala*, 691 F.3d at 537.  In other words, plaintiffs will have to show that it is "more likely than not" that "plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id*.  The second step occurs after discovery, at which point the record has sufficiently developed and the court may determine whether each opt-in plaintiff is similarly situated to the named plaintiff. *Camesi*, 729 F.3d at 243.

## III.    DISCUSSION

As a preliminary matter, federal courts have original jurisdiction over cases presenting federal questions.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")  In the instant matter, Plaintiffs assert a cause of action under 29 U.S.C. § 216(b) of the FLSA.  Further, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the remaining state claims.[2]

### A.    Conditional Certification

Here, Plaintiffs are at step one, and seek conditional certification to properly proceed as a collective action under FLSA.  (Moving Br. at 17.)  Bloomberg argues that conditional certification

---

[2] Plaintiffs also bring this matter as a class action pursuant to the Federal Rules of Civil Procedure 23 under violations of New Jersey and New York overtime laws.  State overtime laws are not at issue in the pending Motion.

is not warranted because Plaintiffs have (1) failed to produce some evidence that there is a common unlawful policy that they were subjected to and (2) Plaintiffs have failed to establish a factual nexus between the manner in which the employer's alleged policy affected them and the manner in which it affected other employees. (Opp'n Br. at 17.)  For the reasons set forth below, the Court finds that Plaintiffs have met the "fairly lenient standard" for certification, and may proceed as a collective action under the FLSA.  *Camesi*, 729 F.3d at 243.

In support of Plaintiffs' Renewed Motion for Conditional Certification, named Plaintiffs have submitted Declarations to the Court.  (*See* ECF No. 122, Hughes Decl.; ECF No. 123, Petkovic Decl.; ECF No. 20-6, Vagle Decl.)  At the conditional certification stage, Plaintiffs are permitted to rely on affidavits or declarations to satisfy their burden.  *See Steinberg v. TD Bank N.A.*, Civ. No. 10-5600, 2012 WL 2500331, at *6 (D.N.J. June 27, 2012).  These supportive documents cannot be based on inadmissible hearsay.  *Kuznyetsov v. West Penn Allegheny Health Sys., Inc.*, Civ, No. 09-0379, 2009 WL 1515175, at *3 (W.D. Pa. June 1, 2009).  Plaintiffs cannot rely on affidavits or declarations that make "blanket assertions" or offer information of which they have no personal knowledge.  *Xin Li v. Chinese Bodyworks, Inc.*, Civ, No. 18-11277, 2020 WL 468344, at *3 (D.N.J. Jan. 27, 2020).

The Court has reviewed Plaintiff's supporting declarations.  In the Declaration submitted by Hughes, Hughes provides that he was a Global Data Analyst ("GDA") within Bloomberg's Global Data Division from May 2016 through January 2018.  (Hughes Decl. ¶ 11.)  As a GDA, his primary job duty was to "to supply properly formatted company and regulatory data to Bloomberg's platform so that it could be accessed by Bloomberg's customers."  (*Id*. ¶ 15.)  He states that while he worked out of the New York office, a majority of the GDAs worked out of the Skillman office in New Jersey, and all GDAs generally worked in teams that pertained to specific

sets of data.  (*Id.* ¶ 8.)  Specifically, Hughes asserts that he was a GDA for the Entities Solutions data team.  (*Id.* ¶ 11.)  Hughes states that "even though our titles have changed over time and even though we worked in different data teams with different types of data," (*Id.* ¶ 16), our primary responsibilities are the same because, "because we received similar training, we worked similar shifts, we had similar performance evaluations, and we worked on projects together.  (*Id.* ¶ 17.)

In regard to hours worked, Hughes declares that himself and other GDAs were scheduled to work eight hours per day, five days a week.  (*Id.* ¶ 20.)  Hughes states that GDAs utilized their work badges to log their hours, as the Bloomberg's badge system recorded the date and time when employees entered and left a Bloomberg office.  (*Id.* ¶ 19.)  Critically, Hughes maintains that he "regularly worked about 5 hours, and at times up to 20 hours, extra work each week beyond my forty regular shift hours without ever receiving overtime compensation at the rate of time and one half for hours over 40 in a week."  (*Id.* ¶ 29.)  Hughes states that Bloomberg never compensated other GDAs for time and one half for any hours over 40 in a pay week.  (*Id.* ¶ 31.)

Named Plaintiff Petkovic submitted a Declaration that largely parallels Hughes' Declaration.  Petkovic was a GDA with the Entities data team from September 2013 through January 2018, (Petkovic Decl. ¶ 12), and moved to the Know Your Consumer data team from February 2018 through January 2019.  (*Id.* ¶ 13.)  Petkovic asserts the same job title and description as Hughes, provides the same work responsibilities and similar use of Bloomberg's badge time-keeping system, and provides the similar allegation of extra hours worked without proper compensation.  (*Id.* ¶¶ 16–18.)  Petkovic states that, "I know that Global Data Analysts shared the same primary job duty because we received similar training, we worked similar shifts, we had similar performance evaluations, and we worked on projects together."  (*Id.* ¶ 19.)  Further, Petkovic similarly provides that, "I regularly worked about 5 hours, and at times up to 40 hours,

6

extra work each week beyond my forty regular shift hours without ever receiving overtime compensation at the rate of time and one half for hours over 40 in a week." (*Id*. ¶ 31.)

Named Plaintiff Vagle's Declaration includes statements similar to Hughes' and Petkovic's Declarations. Vagle was a GDA with the Message Mining team from March 2010 to September 2013 and then for the Dividend Forecasts team from September 2013 to May 2019. (Vagle Decl. ¶ 11.) Vagle provides that he and other GDAs "often worked past the end of our shifts to complete work assignments." (*Id*. ¶ 21.) Specifically, Vagle provides that, "I regularly worked about 2 hours, and at times up to 8 hours, of extra work each week beyond my forty regular shift hours without ever receiving overtime compensation at the rate of time and one half for hours over 40 in a week (*Id*. ¶ 29.) Most notably, Vagle states that, "[i]n January 2019 Bloomberg reclassified my position and the positions of many other Global Data Analysts as non-exempt from overtime." (*Id*. ¶ 30.) And ultimately, Vagle maintains that Bloomberg never compensated himself or other GDAs for pay at the rate of time and one half for any hours worked over 40 in a pay week. (*Id*. ¶ 31.)

Bloomberg contends that Plaintiffs have failed to demonstrate a common unlawful policy to which they were subjected to (Opp'n Br. 19), and that the submitted declarations contain conclusory statements and lack factual evidentiary support. (*Id*. 20.) Further, Bloomberg argues that Plaintiffs have failed to establish a factual nexus between the manner in which the employer's alleged policy affected them and the manner in which it affected other employees, and thus are not "similarly situated." (*Id*. 22.) At length, Bloomberg argues that conditional certification should be denied because putative collective members could be subject to multiple different exemptions (*Id*. 24–32), including but not limited to: the highly compensated employee exemption, the administrative exemption, and computer professional exemption. (*Id*. 25.)

At this stage, the Court is to assess whether Plaintiffs have "produced some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the [Bloomberg's] alleged policy affected them and the manner in which it affected other employees." *Zavala*, 691 F.3d at 536 (quoting *Symczyk*, 656 F.3d at 189). The Court finds that Plaintiffs have met this burden. Specifically, they submitted Declarations which include: the shared job description/title of a GDA, shared work responsibilities, shared job instruction/training, similar use of Bloomberg's badge time-keeping system, and the shared allegation of extra hours worked without pay at the rate of time and one half for any hours over 40 in a pay week. Plaintiffs have therefore produced enough evidence for the Court to find that "similarly situated plaintiffs do in fact exist." *See Zavala*, 691 F.3d at 536, n. 4 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

**B.    Notice**

Upon conditional certification of a FLSA collective action, a court has discretion to provide court-facilitated notice to potentially eligible members of the collective action. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Notice ensures that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* Additionally, notice "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite the disposition of the action." *Id.* at 172. Here, Bloomberg opposes the content and method of Plaintiffs' proposed notice.

Plaintiffs have proposed that notice should be disseminated to all GDAs that worked for Bloomberg at any time within three years preceding December 13, 2019— the date when the claims of the putative FLSA class were tolled. (Moving Br. at 23.) Bloomberg claims that the proposed notice form submitted by Plaintiffs is defective for four reasons. (Opp'n Br. at 33.) First,

Bloomberg argues that, "a single consistent and accurate set of job titles should be used throughout the notice to avoid confusion amongst putative collective members." (*Id.*)  In Plaintiffs' Reply, Plaintiffs concede and agree that the error in the notice where it refers to class members as "Representatives" should be removed.  (Reply Br. 13.)  Therefore, parties agree that notice to potential plaintiffs may include the following job titles: "Global Data Specialist," "Global Data Analysts," and or "Data Analyst," (See ECF No. 121-2, attached as Ex. A).

Moreover, Bloomberg argues that Plaintiffs' proposed notice still fails to advise opt-in plaintiffs that they may be required to participate in discovery if they join this lawsuit and the costs they may incur.  (Opp'n Br. at 33–34.)

At this stage, notice does not need to explicitly inform potential opt-in plaintiffs that they may be required to participate in discovery or pay Defendants' costs because the purpose of notice is to "identify those who believe that they have been injured by the defendants' overtime policy and to give them a forum to pursue their potential claims." *See Sanchez v. Santander Bank, N.A.*, Civ. No. 17-5775, 2019 WL 6050738, at *4 (D.N.J. Nov. 15, 2019).  The decision whether to actually pursue the claim can be made after a potential opt-in plaintiff consults with counsel, at which time counsel can advise them of a plaintiff's duties. *Id.* (citation omitted).

During that consultation, Plaintiffs' counsel are instructed "to advise each opt-in [plaintiff] of his or her obligations before the consent form is filed, including advising the opt-in plaintiffs that they may be required to . . . pay costs if the defendants prevail." *Id.*  Based on the foregoing, the Court declines to require the two revisions to the notice sought by Bloomberg.

Lastly, Bloomberg contends that the notice is misleading because it tells potential class members that the only way to recover on their claims is to opt into the case.  (Opp'n Br. at 35.)

9

A collective action brought under the FLSA is an "opt-in" action, such that all members of the collective action must affirmatively elect to participate. *Barrios v. Suburban Disposal, Inc.*, Civ. No. 12- 03663, 2013 WL 6498086, at *2 (D.N.J. Dec. 11, 2013). The Court agrees with Plaintiffs in that the proposed notice informs potential class members that if they do not opt-in, they will not be entitled to receive any share of a settlement or judgment, and that if they join, they will be bound by the results of the litigation. The Court finds that the content of Plaintiffs' proposed notice meets the purposes of a court-facilitated notice. *Hoffmann-La Roche*, 493 U.S. at 170

Next, Bloomberg opposes the method of Plaintiffs' proposed distribution of notice. (Opp'n Br. at 37.) First, Bloomberg argues that it should not be required to post notice on its employee notice board. Bloomberg argues that because notice will be sent by both first-class mail and email, a notice board posting is duplicative. (Opp'n Br. at 37.) Plaintiffs do not respond as to why notice by electronic first-class mail and email is insufficient. (Moving Br. at 29; see generally Reply Br.)

Here, the Court finds that, as an initial approach, notice by way of first-class mail and electronic mail is sufficient for reaching the opt-in plaintiffs. *See Gilbertson v. J. Givoo Consultants I, Inc.*, Civ. No. 20-6991, 2021 WL 689114, at *3–4 (D.N.J. Feb. 23, 2021) ("The practice of permitting notice by USPS and additional electronic means, including email and text messaging, finds ample support in this district."); *Sanchez*, 2019 WL 6050738, at *8 (D.N.J. Nov. 15, 2019) (finding "courts in this District have found notice by electronic means in conjunction with first class mail to be an appropriate method of facilitating notice." Further, the Court will also permit a reminder notice to be sent by mail and email. *Porter v. Merrill Lynch Pierce*, Civ. No. 17-8043, 2018 WL 5874094, at *5 (D.N.J. Nov. 9, 2018) (allowing reminder notice).

Finally, to facilitate the notice, Bloomberg will be ordered to produce the relevant names, addresses, phone numbers and email addresses of potential class members. *See Hoffmann-La Roche*, 493 U.S. at 170.[3]

## IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court will grant Plaintiffs' Renewed Motion to Approve Collective Class Action.  An appropriate Order will follow.


Date: **February 28, 2023**

                              s/ Zahid N. Quraishi
                              **ZAHID N. QURAISHI**
                              **UNITED STATES DISTRICT JUDGE**

---

[3] Initially, Plaintiffs also sought dates of birth and partial social security numbers for potential class members. Bloomberg argues that these should be denied as an invasion of privacy.  (Opp'n Br. at 39.)  In Reply, Plaintiffs concede, and now limit their request for dates of birth and last four digits of social security numbers to instances when a notice is returned undeliverable to any class member.  (Reply Br. at 15.)  At this time, the Court finds Plaintiffs' request premature.  *Fischer v. Kmart Corp.*, Civ. No. 13-4116, 2014 WL 3817368, at *22 (D.N.J. Aug. 4, 2014). Should notices be returned undeliverable, the parties are to meet and confer on this issue before seeking relief from the Court.